# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

**ROBERT GORDON,**

    **Plaintiff,**

  **v.**

**ERIC HOLDER, Attorney General of the United States, et al.,**

    **Defendants.**

</td><td>

**Civil Action 10-1092 (RCL)**

</td></tr>
</table>

## MEMORANDUM OPINION

Robert Gordon ("Gordon") brings suit against Eric Holder, Attorney General of the United States, the United States Department of Justice, the Bureau of Alcohol, Tobacco, Firearms and Explosives and its Acting Director, B. Todd Jones,[1] the United States Postal Service, and Postmaster General John Potter (collectively, "defendants" or "the Government") seeking a declaration that the Prevent All Cigarette Trafficking Act ("PACT Act" or "the Act"), Pub. L. No. 111-154, 124 Stat. 1087 (2010) violates the Fifth and Tenth Amendments of the United States Constitution.  Before the Court are Gordon's renewed application for a preliminary injunction [Dkt. #16] and the Government's motion to dismiss Gordon's complaint for failure to state any claim upon which relief can be granted [Dkt. #17].  Upon consideration of both motions, the oppositions thereto, and the arguments of counsel at a hearing,[2] the Court concludes that each motion should be granted in part and denied in part.

---

[1] This action was filed against Kenneth Melson as the Acting Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives.  B. Todd Jones is Mr. Melson's successor as Acting Director and is substituted as defendant.  *See* Fed. R. Civ. P. 25(d).

[2] The undersigned carefully reviewed the transcript of the hearing held before Judge Henry H. Kennedy, Jr. on August 16, 2011.

# I.   BACKGROUND

## 1.  The PACT Act

The PACT Act "significantly amended its predecessor, the Jenkins Act," and "was aimed primarily at combating three evils: tobacco sales to minors, cigarette trafficking, and circumvention of state taxation requirements." *Gordon v. Holder*, 632 F.3d 722, 723 (D.C. Cir. 2011).  In the case before the Court, Gordon challenges two of the means Congress chose to achieve its goals.  First, the Act makes it unlawful to deliver cigarettes and smokeless tobacco products through the United States Mail.  18 U.S.C. § 1716E(a).[3]  Second, the Act prohibits remote sales of cigarettes and smokeless tobacco unless the applicable state and local taxes are paid in advance.  15 U.S.C. § 376a(a)(3)–(4), (d).[4]  The Act includes other provisions that

---

[3]  In relevant part, this section provides that:

All cigarettes and smokeless tobacco (as those terms are defined in section 1 of the Act of October 19, 1949, commonly referred to as the Jenkins Act) are nonmailable and shall not be deposited in or carried through the mails. The United States Postal Service shall not accept for delivery or transmit through the mails any package that it knows or has reasonable cause to believe contains any cigarettes or smokeless tobacco made nonmailable by this paragraph.

18 U.S.C. § 1716E(a)(1).

[4]  Sections 376a(a)(3) and (4) provide that:

With respect to delivery sales into a specific state and place, each delivery seller shall comply with

(3) all state, local, tribal, and other laws generally applicable to sales of cigarettes or smokeless tobacco as if the delivery sales occurred entirely within the specific state and place, including laws imposing--

(A) excise taxes;

(B) licensing and tax-stamping requirements;

Gordon does not challenge, including new registration, shipping, record-keeping, and age-verification requirements, as well as new penalties and enforcement mechanisms.

_____

> (C) restrictions on sales to minors; and
>
> (D) other payment obligations or legal requirements relating to the sale, distribution, or delivery of cigarettes or smokeless tobacco; and
>
> (4) the tax collection requirements set forth in subsection (d).

15 U.S.C. § 376a(a)(3)–(4).

> Subsection 376a(d) reads in relevant part:
>
> (1) In general
>
> Except as provided in paragraph (2), no delivery seller may sell or deliver to any consumer, or tender to any common carrier or other delivery service, any cigarettes or smokeless tobacco pursuant to a delivery sale unless, in advance of the sale, delivery, or tender--
>
> > (A) any cigarette or smokeless tobacco excise tax that is imposed by the State in which the cigarettes or smokeless tobacco are to be delivered has been paid to the State;
> >
> > (B) any cigarette or smokeless tobacco excise tax that is imposed by the local government of the place in which the cigarettes or smokeless tobacco are to be delivered has been paid to the local government; and
> >
> > (C) any required stamps or other indicia that the excise tax has been paid are properly affixed or applied to the cigarettes or smokeless tobacco.
>
> (2) Exception
>
> Paragraph (1) does not apply to a delivery sale of smokeless tobacco if the law of the State or local government of the place where the smokeless tobacco is to be delivered requires or otherwise provides that delivery sellers collect the excise tax from the consumer and remit the excise tax to the State or local government, and the delivery seller complies with the requirement.

15 U.S.C. § 376a(d).

**2.  Plaintiff Robert Gordon**

Gordon, an enrolled member of the Seneca Indian tribe in New York State, owns a store and mail order business that sells cigarettes and other tobacco products, and as such, is a "delivery seller" under the PACT Act.  15 U.S.C. § 375(5)–(6).  Gordon previously accepted orders through an internet website and by mail, but since the summer of 2010 he has only sold his products in his store and accepted orders over the telephone.  Although customers can no longer place orders on his website, it can still be visited and directs would-be purchasers to contact the business by telephone.  Gordon's website—www.allofourbutts.com—also states that "[a]s a Sovereign Nation, we do not pay state taxes on cigarettes and tobacco products, we then pass this savings on to all of our customers nationwide by offering discount cigarettes, chewing tobacco, pipe tobacco and domestic cigars online."  *See* www.allofourbutts.com (last visited Nov. 28, 2011). Before the PACT Act went into effect, 95% of Gordon's sales were shipped by U.S. mail.  Since the Act became effective, he has used a small shipping company that delivers to certain zip codes in six states.

**3.  Procedural History**

The PACT Act became effective on June 29, 2010.  On June 28, 2010, Gordon filed this suit alleging that two of the Act's provisions are unconstitutional, along with a motion for a temporary restraining order that sought to enjoin the enforcement of those two provisions.  After Judge Henry H. Kennedy, Jr. denied the motion, Gordon appealed, and the D.C. Circuit remanded the case for "appropriate consideration" of the factors that a plaintiff seeking a preliminary injunction must demonstrate.  *Gordon*, 632 F.3d at 726.

The D.C. Circuit made three "observations" to guide the Court's analysis on remand. *Id.* at 725. First, the Circuit stated that the Court "will need to separate its analysis of Gordon's likelihood of success on each of his constitutional claims." *Id.* On this point, the Circuit noted that "[t]he government's suggestion that there can be no Due Process violation when Congress authorizes state levies based on minimum contacts collapses the Due Process and Commerce Clause aspects of Gordon's claims," despite the fact that "the inquiries are analytically distinct and should not be treated as if they were synonymous." *Id.* Although national legislation "can permissibly sanction burdens on interstate commerce," it "cannot violate the Due Process principles of 'fair play and substantial justice.'" *Id.* at 726 (citing *Quill Corp. v. North Dakota*, 504 U.S. 298, 307 (1992)). The Circuit stated that "*Quill*'s analytical approach is instructive" as to the "open question of whether a national authorization of disparate state levies on e-commerce renders concerns about presence and burden obsolete." *Id.*

Second, the Circuit found that this Court would need to resolve the "potential standing issue with respect to Gordon's Tenth Amendment claim." *Id.*[5] Third, "to the extent Gordon's Due Process argument turns on his minimum contacts with the states, the rules governing minimum contacts may need to be addressed" by the Court. *Id.* (citing *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 512 (D.C. Cir. 2002)).

---

[5] In light of the Supreme Court's recent decision in *Bond v. United States*, 131 S. Ct. 2355 (2011), the Government has withdrawn its challenge to Gordon's standing to bring his Tenth Amendment commandeering claim.

After remand, Gordon renewed his application for a preliminary injunction, which the

Government opposes in addition to moving to dismiss his complaint for failure to state any claim

upon which relief can be granted.[6]

## II.   ANALYSIS

In his renewed application, Gordon asks the Court to "enjoin the United States Postal

Service from refusing to accept and deliver packages containing cigarettes and other tobacco

products, and the United States Department of Justice from pursuing criminal sanctions against

Mr. Gordon for alleged violations of the mailing ban and state taxation provisions of the PACT

Act."  P.I. Mot. at 1.[7]

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a

clear showing that the plaintiff is entitled to such relief."  *Winter v. Natural Res. Def. Council,

Inc.*, 555 U.S. 7, 22 (2008).  "A plaintiff seeking a preliminary injunction must establish that he

is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of

preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the

---

[6] Two grounds for two claims Gordon raises in his amended complaint are not included as grounds for his preliminary injunction motion.  Count One (Violation of the Equal Protection Component of the Fifth Amendment) alleges that the PACT Act violates equal protection through its racially disproportionate impact on American Indians and was motivated by a racially discriminatory intent.  Am. Compl. ¶¶ 94, 95.  Count Two (Violation of the Due Process Clause of the Fifth Amendment) includes a claim that the PACT Act's criminal penalties are impermissibly vague.  Am. Compl. ¶ 103.  The Government has moved to dismiss those claims, along with all the others, but Gordon's opposition does not respond to the Government's motion as to these claims.  Counsel for Mr. Gordon indicated at the preliminary injunction hearing that Gordon has withdrawn these two claims.

[7] The tax provisions that Gordon challenges are currently subject to an injunction imposed by the Western District of New York in *Red Earth LLC v. United States*, 728 F. Supp. 2d 238, 260 (W.D.N.Y. 2010), and upheld by the Second Circuit, 657 F.3d 138, 148 (2nd Cir. 2011).

public interest." *Gordon*, 632 F.3d at 724 (quoting *Winter*, 555 U.S. at 20). The application of each of these factors to Gordon's claims is considered in turn.

**1.      Gordon's Likelihood of Success on the Merits**

Gordon raises three distinct grounds for a preliminary injunction in his motion. First, Gordon argues that the ban on shipping cigarette and other smokeless tobacco products through the mails violates his due process rights by arbitrarily and irrationally banning the mailing of lawful tobacco products  and violates his equal protection rights by irrationally preferring in-state tobacco merchants over out-of-state merchants. Second, Gordon contends that the tax provisions violate the Due Process Clause by requiring non-resident retailers to pay state and local taxes without regard to whether they have minimum contacts with the state or locality. Third, Gordon asserts that the PACT Act's tax provisions violate the Tenth Amendment by unconstitutionally commandeering state tax officials by requiring them to alter their own taxation laws and implement a federally-imposed taxation scheme for collecting prepaid excise taxes on remote sellers. The Government opposes Gordon's motion for a preliminary injunction on these grounds, and also moves to dismiss the claims under Federal Rule of Civil Procedure 12(b)(6). The Court addresses Gordon's likelihood of success as to each of these claims in turn.

**A.      The PACT Act's Mail Ban Does Not Violate Due Process or Equal Protection**

Gordon argues that the PACT Act violates his due process rights under the Fifth Amendment by precluding him from following his chosen profession and by interfering with his property interest in his salary because he can no longer ship his legal products in a commercially viable way and is operating at a net loss. Gordon further claims that the Act violates his equal protection rights because the mail ban is aimed at delivery sellers and excludes sellers who

engage in face-to-face transactions.  The statute fails rational basis review,[8] he alleges, because

the mail ban is not rationally related to any of the six stated purposes of the PACT Act[9] given

that other provisions of the Act serve the goals—preventing underage tobacco use and increasing

tax collection—that the mail ban purports to advance.  Gordon contends the mail ban is also

irrational in its "unprecedented" ban on a legal product that poses no danger to mail carriers or

other mail, and further argues that forcing mail-order sellers out of business indicates that the

true purpose of the mail ban is to protect the interests of "Big Tobacco" and convenience stores.

In sum, Gordon's argument against the mail ban is that a complete mail ban does not rationally

further any legitimate purpose not already achieved by the Act and at the same time destroys

legitimate retailers, like himself, with rigorous age-verification procedures.

---

[8]  The parties agree that the PACT Act's mail ban is subject to rational basis review.

[9]  Gordon cites the following as Congress's six purposes in enacting the PACT Act:

(1) require Internet and other remote sellers of cigarettes and
smokeless tobacco to comply with the same laws that apply to law-abiding tobacco
retailers;

(2) create strong disincentives to illegal smuggling of tobacco products;

(3) provide government enforcement officials with more effective enforcement tools to
combat tobacco smuggling;

(4) make it more difficult for cigarette and smokeless tobacco traffickers to engage in and
profit from their illegal activities;

(5) increase collections of Federal, State, and local excise taxes on cigarettes and
smokeless tobacco; and

(6) prevent and reduce youth access to inexpensive cigarettes and smokeless tobacco
through illegal Internet or contraband sales.

P.I. Mot. at 14 (citing PACT Act § 1(c)(1)–(6)).

In response, the Government moves to dismiss Gordon's claim that the mail ban violates the Fifth Amendment on the ground that it fails to state a claim upon which relief can be granted. To start, Congress has the authority to ban the use of the mail for shipping tobacco products because the Constitution grants Congress plenary power over the postal system.  Indeed, the Government states, Congress has already banned the mailing of numerous classes of items—not all of which endanger the mail or mail carriers, including motor vehicle master keys and lock-smithing devices.  The Government argues that the mail ban provisions are in fact rationally related to Congress's purposes, even if other PACT Act provisions also advance the same goals. The Government emphasizes that under rational basis review, the Court cannot second-guess Congress's legislative judgment, *see FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993), or the legislative means it selected to address underage smoking and the criminal enterprises that benefit from untaxed cigarettes.  Further, the Court cannot invalidate the mail ban based on Gordon's allegation that protecting Big Tobacco was its true motivation because "'it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature.'" Gov't Opp'n to P.I. Motion at 13 (quoting *Beach Commc'ns, Inc.*, 508 U.S. at 315).

The Court concludes that the Government has the better argument.  "[R]ational-basis review 'is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.'" *Am. Bus Ass'n v. Rogoff*, 649 F.3d 734, 742 (D.C. Cir. 2011) (quoting *Beach Commc'ns*, 508 U.S. at 313.)).  "Nor does it authorize 'the judiciary [to] sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines.'"  *Heller v. Doe*, 509 U.S. 312, 319 (1993)

(quoting *New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) (per curiam)). "In the ordinary case, a law will be sustained if it can be said to advance a legitimate government interest, even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous." *Romer v. Evans*, 517 U.S. 620, 632 (1996).  Under rational basis review, "[a] statute is presumed constitutional, and the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it." *Heller*, 509 U.S. at 320 (alterations, citations, and internal quotation marks omitted).  The Court must uphold the mail ban under rational basis review "as long as there is a 'rational relationship between the disparity of treatment and some legitimate governmental purpose.'" *Rogoff*, 649 F.3d at 742 (quoting *Heller*, 509 U.S. at 320).

The mail ban passes rational basis review because it can be said to advance the legitimate government interests of reducing underage tobacco use and cigarette trafficking. Although the ban affects delivery sellers but not brick-and-mortar sellers, the ban has a rational relationship to the purposes of the Act, which include a desire to eliminate the problems associated with selling tobacco products remotely, such as the ease of avoiding age-verification and tax-collection.

The law is clear that Congress has the authority to ban any material from the mails in the name of public policy.  Contrary to Gordon's suggestion, "[t]he power of Congress over the mails is not limited to the protection of facilities of the mails [and] may be exercised to prevent the use of the mails for purposes which it deems objectionable to sound public policy." *Elec. Bond & Share Co. v. SEC,* 92 F.2d 580, 588 (2d Cir. 1937); *see also Musser's Inc. v. United States*, 2011 WL 4467784, at *7 (E.D. Pa. Sept. 26, 2011) (rejecting a similar equal protection challenge to the PACT Act's mail ban, reasoning that "Congress has long provided that specified

items are 'non-mailable,' including alcohol, firearms, poisons, inflammable materials, etc.")
(citing 18 U.S.C. § 1715–17); *Ex parte Jackson*, 96 U.S. 727, 736 (1877) ("In excluding various
articles from the mail, the object of Congress has not been to interfere with the freedom of the
press, or with any other rights of the people; but to refuse its facilities for the distribution of
matter deemed injurious to the public morals.").

 Gordon's argument that the PACT Act's provisions are both overbroad and duplicative
fails because even if he were correct, "courts are compelled under rational-basis review to accept
a legislature's generalizations even when there is an imperfect fit between means and ends." *Id.*
at *7 (*quoting Heller*, 509 U.S. at 321); *see also Vance v. Bradley*, 440 U.S. 93, 108 (1979)
("Even if the classification involved here is to some extent both underinclusive and
overinclusive, and hence the line drawn by Congress imperfect, it is nevertheless the rule that in a
case like this 'perfection is by no means required.'") (quoting *Phillips Chem. Co. v. Dumas Sch.
Dist.*, 361 U.S. 376, 385 (1960)); *Dandridge v. Williams*, 397 U.S. 471, 485 (1970) ("In the area
of economics and social welfare, a State does not violate the Equal Protection Clause merely
because the classifications made by its laws are imperfect.").

 As for Gordon's claim that the PACT Act's mail ban is intended to reward the lobbying
efforts of the tobacco industry and convenience stores and amounts to simple economic
protectionism, the Court has to "assume that the objectives articulated by the legislature are
actual purposes of the statute, unless an examination of the circumstances forces [it] to conclude
that they could not have been a goal of the legislation." *Minnesota v. Clover Leaf Creamery Co.*,
449 U.S. 456, 462 n.7 (1981) (internal quotation marks omitted) (refusing to "invalidate a state
statute under the Equal Protection Clause merely because some legislators sought to obtain votes

for the measure on the basis of its beneficial side effects on state industry").  Thus, regardless of whether Congress may have been influenced or motivated by a purpose other than those it stated, the Court must uphold the Act "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."  *Heller*, 509 U.S. at 320 (quoting *Beach Commc'ns*, 508 U.S. at 313).  Because the mail ban advances legitimate government interests and is rationally related to those interests, the Court finds that Gordon has failed to state a claim that the mail ban violates the Due Process and Equal Protection Clauses of the Fifth Amendment.

**B.      The PACT Act's Tax Provisions May Violate the Due Process Clause**

Gordon next argues that the PACT Act violates the due process rights of nonresident tobacco retailers by subjecting them to taxes in state and local forums without regard to whether they have minimum contacts with the taxing jurisdiction, relying principally on *Quill v. North Dakota*, 504 U.S. 298 (1992) and a similar challenge in *Red Earth LLC v. United States*, 728 F. Supp. 2d 238 (W.D.N.Y. 2010).  In response, the Government poses two alternative arguments: (a) because the PACT Act is a federal law, Gordon need only have minimum contacts with the United States, not any individual state; and (b) even if minimum contacts with each state are required, each of Gordon's tobacco sales into a state satisfies minimum contacts with that state.

In support of the first argument, the Government asserts that the Supreme Court has repeatedly rejected the suggestion that Congress subjects interstate businesses to the independent authority of states when it requires them to comply with the laws of the places where they do business.  *See James Clark Distilling Co. v. W. Md. Ry. Co.*, 242 U.S. 311, 327 (1917); *Ky. Whip & Collar Co. v. Ill. Cent. Ry. Co.*, 299 U.S. 334, 351–52 (1937).  In these cases, the Government explains, the Supreme Court held that statutes that require interstate businesses to respect the

laws of the places where they ship their products do not subject those businesses to the jurisdiction of any particular state.  In *James Clark*, for example, the Supreme Court held that the Webb-Kenyon Act, which prohibited the shipment of alcoholic beverages when they were intended to be used in violation of the law of the state, did not submit liquors to the control of the states.  242 U.S. at 325–27.  Rather, "the will which causes the prohibitions to be applicable is that of Congress, since the application of state prohibitions would cease the instant the act of Congress ceased to apply."  *Id.* at 326.  In *Kentucky Whip*, the Supreme Court upheld a statute barring shipment of goods into states where the goods were intended to be received in violation of state law.  The Court found that because Congress had not tried to delegate its authority to the states, the statute did not conflict with the requirements of due process.  299 U.S. at 352.

The Government argues that these cases undermine Gordon's premise that through the Act, Congress subjects him to the will of the states where he does business.  Citing various laws regulating the sale of firearms, products from online pharmacies, agriculture seeds, and explosives, as well as those that regulate online gambling, the Government maintains that this type of regulation—where Congress simply requires compliance with the laws of each state—is commonplace and does not violate due process.

The Government's argument is not persuasive.  The Court recognizes that *Quill* involved a due process challenge to a state law, while the PACT Act is a federal law.  However, unlike the laws in *Kentucky Whip* and *James Clark*, which merely required individuals to comply with existing state laws, the PACT Act appears to impose a new, independent duty on the delivery seller by requiring that they ensure that the applicable state and local taxes are paid.  Moreover, the Court understands the D.C. Circuit to have already rejected the Government's argument by

stating that "while Congress has plenary power to regulate commerce among the States and thus

may authorize state actions that burden interstate commerce, it does not similarly have the power

to authorize violations of the Due Process Clause." *Gordon*, 632 F.3d at 725–26 (quoting *Quill*,

504 U.S. at 305)).[10]

In its second argument, the Government asserts that "[t]here is no doubt that plaintiff

purposefully avails himself of the economic markets of the states into which he sells tobacco

products." Gov't Opp'n at 18.  Even if minimum contacts with the individual states are required,

it is the Government's position that each of Gordon's sales establishes minimum contacts to

satisfy due process.  The Court is not convinced.

The D.C. Circuit directed the Court to the Supreme Court's decision in *Quill Corp. v.*

*North Dakota*, 504 U.S. 298 (1992), which concerned the due process implications of imposing a

state tax on an out-of-state mail order business.  Before examining *Quill*, however, it is helpful to

review the seminal Supreme Court due process cases setting forth the personal jurisdiction law

upon which *Quill* built.

---

[10] In *Musser's Inc. v. United States*, 2011 WL 4467784 (E.D. Pa. Sept. 26, 2011), the
court agreed with the Government's argument in a similar due process challenge to the PACT
Act's tax provisions.  Noting that in regulating interstate commerce, Congress has required
interstate businesses like firearms distributors, online pharmacies, and farmers to comply with
state and local laws of the states where they deliver their products, the court stated, without
citation, that "[f]ederal requirements like these have been found not to offend due process." *Id.*
at *5.  Holding that "[a]ll interstate businesses are subject to the legislative jurisdiction of
Congress who is free to require compliance with state law as a condition of engaging in interstate
commerce," *id.* (citing *Int'l Shoe Co.*, 326 U.S. at 315), the court found that plaintiff did not
demonstrate a likelihood of success on the merits.  *Id.*  This Court disagrees, finding that the
holding in *Musser's* "collapses the Due Process and Commerce Clause aspects" of the PACT Act
challenge, as the D.C. Circuit held in rejecting the government's similar argument in this case.
*Gordon*, 632 F.3d at 725.  As the D.C. Circuit also stated, "[e]ven national legislation—which
can permissibly sanction burdens on interstate commerce—cannot violate the Due Process
principles of 'fair play and substantial justice.'" *Id.* at 726 (quoting *Quill*, 504 U.S. at 307).

In *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), the Supreme Court "framed the relevant [due process] inquiry as whether a defendant had minimum contacts with the jurisdiction 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Quill*, 504 U.S. at 307 (quoting *Int'l Shoe*, 326 U.S. at 316 (internal quotation marks omitted)).  The Court characterized this standard as "a more flexible inquiry into whether a defendant's contacts with the forum made it reasonable, in the context of our federal system of Government, to require it to defend the suit in that State." *Id.*  Applying these principles in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985), the Court held that a lack of physical presence will not defeat personal jurisdiction "[s]o long as a commercial actor's efforts are 'purposefully directed' toward residents of another State." *Id.*  "The purposeful availment requirement," the Supreme Court explained, "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Id.* at 475 (citations and internal quotation marks omitted).  In contrast,

> Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum State. Thus where the defendant deliberately has engaged in significant activities within a State, or has created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Id*. at 475–76 (footnote, citations, and internal quotation marks omitted).

The Supreme Court noted that a single act can support jurisdiction "[s]o long as it creates a 'substantial connection' with the forum. *Id.* at 475 n.18.  However, "some single or occasional acts related to the forum may not be sufficient to establish jurisdiction if their nature and quality

and the circumstances of their commission create only an attenuated affiliation with the forum." *Id*. (internal quotation marks omitted). "The distinction derives from the belief that, with respect to this category of isolated acts, the reasonable foreseeability of litigation in the forum is substantially diminished." *Id*. (citation and internal quotation marks omitted).

The Supreme Court next held in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980), that the "the foreseeability that is critical to due process analysis . . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* at 297–98. The Due Process Clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." Id. at 297.

In *Quill Corp. v. North Dakota*, 504 U.S. 298 (1992), a mail order business incorporated in Delaware with warehouses in Illinois, California, and Georgia, challenged a North Dakota use tax under the Due Process and Commerce Clauses on the grounds that "North Dakota [did] not have the power to compel it to collect a use tax from its North Dakota customers" because Quill did not have any property or personnel in that state. *Id.* at 303. Addressing Quill's due process challenge, the Supreme Court summarized its earlier due process jurisprudence, stating that "[t]he Due Process Clause requires some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax . . . and that the income attributed to the State for tax purposes must be rationally related to values connected with the taxing State." *Id*. at 306 (citations and internal quotation marks omitted).[11]

---

[11] The Supreme Court recognized that in *Quill*, it was "concerned primarily with the first of these requirements." *Id*. at 306.

Although *International Shoe, World-Wide Volkswagen, and Burger King* concern personal jurisdiction rather than taxing jurisdiction, *Quill* applied their "[c]omparable reasoning" and concluded that it "justifie[d] imposition of the collection duty on a mail-order house that is engaged in continuous and widespread solicitation of business within a State. *Id.* at 308.[12]  The Court found that Quill's mail order business had minimum contacts with North Dakota sufficient to meet the requirement of due process because there was "no question that Quill purposefully directed its activities at North Dakota residents, that the magnitude of those contacts is more than sufficient for due process purposes, and that the use tax is related to the benefits Quill receives from access to the State." *Id.*

The D.C. Circuit noted that *Quill*'s "analytical approach is instructive," *Gordon*, 632 F.3d at 726, to the case before the Court, and Gordon's argument rests in large part in *Quill*'s holding. Applying *Quill*'s enunciation of the Due Process Clause, which "requires some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax . . . and that the income attributed to the state for tax purposes must be rationally related to the values connected with the taxing State," 504 U.S. at 306, the Court finds that the standard is not met.  At this stage in the proceedings, the Court cannot find that each of Gordon's sales establishes the requisite minium contacts with the states in which he sells his products such that the PACT Act's tax provisions satisfy due process.  That is, the Court cannot say that Gordon's business "purposefully avails itself of the benefits of [the] economic market" of the states into

---

[12]  Although the Supreme Court in *Quill* built upon its personal jurisdiction precedent, it did not specify whether the due process inquiry applicable to a use tax was more like general jurisdiction or specific jurisdiction.

which he sells his products or that it "purposefully directed its activities" at residents of these states. *Quill*, 504 U.S. at 307–08.

Moreover, even if a single sale of tobacco to a resident of another state could serve as the "definite link" and "the minimum connection" between that state and the sale transaction, on the record before it, the Court cannot find that the tax on Gordon's products is "rationally related to values connected with the taxing State." *Id.* In *MeadWestvaco Corp. v. Illinois Dept. of Revenue*, 553 U.S. 16, 24-25 (2008), the Supreme Court explained that "[t]he broad inquiry" encompassed by both the Due Process Clause and the Commerce Clause is "whether the taxing power exerted by the state bears fiscal relation to protection, opportunities and benefits given by the state—that is, whether the state has given anything for which it can ask return." 553 U.S. 16, 24-25 (2008) (internal quotation marks omitted). The Court cannot determine what, if any, "protection, opportunities, [or] benefits," *id.,* Gordon receives from the state into which he delivers his products, aside from the fact that his buyer resides there. These circumstances are unlike those presented in *Quill*, in which Quill "engaged in continuous and widespread solicitation of business" within North Dakota, *id.* at 308, through twenty-four tons of catalogs and flyers mailed into the state every year, which were ultimately disposed of by the state. *Id.* at 304. Accordingly, the Court finds that the PACT Act's tax provisions may violate due process.

The Court's conclusion is consistent with the Western District of New York's holding in in *Red Earth LLC v. United States*, 728 F. Supp. 2d 238 (W.D.N.Y. 2010), which the United States Court of Appeals for the Second Circuit recently upheld. The plaintiffs[13] in *Red Earth* also

---

[13] Plaintiff Aaron J. Pierce, a member of the Seneca Nation of Indians, owns and operates a tobacco retail business located on a reservation in the Seneca Nation Territory under the name Red Earth LLC d/b/a Seneca Smokeshop. Plaintiff Seneca Free Trade Association ("SFTA"), a not-for-profit organization chartered by the Seneca Nation, is authorized to engage in advocacy

challenged the PACT Act's tax provisions, arguing that "the PACT Act violates the Due Process

Clause because it subjects [plaintiffs] to the taxing jurisdiction of state and local governments

without regard to whether they have sufficient minimum contacts with those taxing

jurisdictions." *Id*. at 247.  The court rejected the Government's contention that each tobacco

"transaction itself creates sufficient minimum contacts with a forum for due process purposes."

*Id*. at 250.  While acknowledging that a "'bright-line' rule holding that each sale automatically

satisfies minimum contacts with a taxing jurisdiction is appealing, and would undoubtedly inject

certainty into the area of whether minimum contacts exist," the Western District found that "such

a rule has not yet been endorsed by the Supreme Court or by any circuit courts," and cited cases

"suggest[ing] the opposite—that a single, isolated sale may not be enough to subject a seller to a

foreign jurisdiction," and others holding that a single sale was insufficient for the exercise of

personal jurisdiction.  *Id*.[14]

The Western District observed that "if a single sale into a foreign jurisdiction were

sufficient to automatically impose a duty-to-collect taxes, the Supreme Court in *Quill* likely

would have rested its due process discussion on that ground." *Id.* at 251.  The Supreme Court

did not do so, the Western District explained, but instead "opined that minimum contacts existed

because the mail-order house at issue had 'engaged in continuous and widespread solicitation of

business' within that state." *Id.* (quoting *Quill*, 504 U.S. at 308).  The court found that

---

efforts on behalf of its members.  728 F. Supp. 2d at 242. Gordon is a member of the SFTA.
Gov't Opp'n at 30.

[14]  One of the cases the Western District cited as holding that a single sale is not sufficient
to establish personal jurisdiction, *Chloe v. Queen Bee of Beverly Hills*, *LLC,* 630 F. Supp. 2d 350
(S.D.N.Y. 2009), has since been reversed by the Second Circuit.  *Chloe v. Queen Bee of Beverly
Hills*, LLC, 616 F.3d 158, 172 (2d Cir. 2010) (finding minimum contacts in the absence of a
continuing relationship as long as defendant's conduct is "purposefully directed" at the forum).

> By failing to require any minimum contacts before subjecting the out-of-state retailer to "all state, local, tribal, and other laws generally applicable to sales of cigarettes or smokeless tobacco," Congress is broadening the jurisdictional reach of each state and locality without regard to the constraints imposed by the Due Process Clause. That it cannot do. It would appear that the PACT Act seeks to legislate the due process requirement out of the equation. To the extent that it does and that doing so is beyond Congressional authority, plaintiffs have established a clear likelihood of success on the merits of their due process claim.

*Id.* at 251–52.[15]

In sum, this Court concludes that Gordon has a likelihood of success of his claim that due process is not satisfied by a single sale of cigarettes into a state.

## C.    The PACT Act's Tax Provisions Do Not Violate The Tenth Amendment

Gordon's Tenth Amendment claim is based on the argument that the PACT Act unlawfully commandeers states by requiring them to collect taxes from delivery sellers before a product can be shipped and thereby forcing them to implement a taxation scheme that is different from the ones the states previously had.  Gordon cites *New York v. United States*, 505 U.S. 144, 175 (1992), which held that it is beyond Congress's authority to "'commandeer' state governments into the service of federal regulatory purposes."  Gordon complains that under the Act states must collect taxes from the seller before the sale, rather than from the buyer after the sale. The Government denies that the PACT Act commandeers state governments, arguing that

---

[15]  The Second Circuit recently affirmed this holding, finding that it was not an abuse of discretion.  *Red Earth*, 657 F.3d 138 (2d Cir. 2011).  The court reasoned that "[t]he PACT Act requires a seller to collect state and local taxes based on its making of one delivery, but the federal courts have for decades steered away from the question of whether a single sale is enough to satisfy the requirements of due process."  *Id*. at 145.  The Second Circuit explained that "[t]he Supreme Court has never found 'that a single isolated sale . . . is sufficient . . . [n]or has it held that a single sale into a state is insufficient for due process purposes, although its 'previous holding suggest' as much." *Id*. (quoting *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2792 (2011) (Breyer, J., concurring in the judgment)).  The court found that the district court reached a reasonable conclusion on a close question of law and declined to decide the merits at this preliminary stage of the case.

the Act simply requires delivery sellers to comply with existing state and local tax laws.  It is the

remote sellers that have to alter their behavior; the states can still determine with full autonomy

whether and to what extent to tax sales of tobacco products.  The Government has the better

argument.

The PACT Act starkly contrasts with the federal statute that the Supreme Court

invalidated in *New York v. United States* for violating the principles of federalism contained in

the Tenth Amendment.  In that case, New York challenged the Low-Level Radioactive Waste

Policy Act, which directed that "[e]ach State shall be responsible for providing, either by itself or

in cooperation with other States, for the disposal of . . . low-level radioactive waste generated

within the State."  *Id*. at 151 (quoting 42. U.S.C. § 2021c(1)(A)) (internal quotation marks

omitted).  The act provided three alternative incentives for a State to comply with the obligation

to dispose of radioactive waste generated by its residents:

(a)     The Secretary of Energy would provide monetary incentives for states that
        complied with interim disposal deadlines.  If a state did not meet the ultimate
        deadline, it would have to either take title to its radioactive waste or forfeit all of
        its incentive payments.

(b)     States that failed to comply with interim deadlines would face multiplying
        surcharges and eventually be denied access to disposal sites in other states.

(c)     If a state failed to meet the disposal deadline, the state would be obligated to take
        title to the waste and be liable for all damage incurred by the generator or owner
        of the waste arising from the state's failure to take possession of the waste.

*Id*. at 152–53.

The Supreme Court upheld the first incentive as a valid use of Congress's authority under

the Commerce and Spending Clauses: Congress may place conditions (here, meeting certain

milestones) on the receipt of federal funds, and the conditions imposed are reasonably related to

the purpose of the funding.  The Court held that the second incentive was a valid exercise of

power under the Commerce Clause because a state may either regulate according to the federal

standards or the waste producers in the state would be denied access to disposal sites.  The Court

found that "[t]he affected States are not compelled by Congress to regulate, because any burden

caused by a States refusal to regulate will fall on those who generate waste and find no outlet for

its disposal, rather than on the State as a sovereign."  *Id.* at 174.  Critically important was the fact

that:

> A State whose citizens do not wish it to attain the Act's milestones may devote its
> attention and its resources to issues its citizens deem more worthy; the choice remains at
> all times with the residents of the State, not with Congress.  The State need not expend
> any funds, or participate in any federal program, if local residents do not view such
> expenditures or participation as worthwhile.

*Id*.

Unlike the first two provisions, however, the Supreme Court found that the third

provision was not an incentive, but coercion.  *Id*. at 175.  Under the so-called take-title provision,

a state had a supposed "choice" between regulating according to the federal standards or taking

title to the waste from producers and accepting liability for it.  *Id.*  The Court found that the first

"option"—for Congress to transfer radioactive waste from generators to state governments was a

"forced transfer," which "would in principle be no different than a congressionally compelled

subsidy from state governments to radioactive waste producers."  *Id.*  Similarly, the provision

that would make states liable for the generators' damages "would be indistinguishable from an

Act of Congress directing the States to assume the liabilities of certain state residents."  *Id*.  Both

"would 'commandeer' state governments into the service of federal regulatory purposes, and

would for this reason be inconsistent with the Constitution's division of authority between federal and state governments." *Id.*

The second "option"—for states to regulate pursuant to Congress's direction—impermissibly "present[s] a simple command to state governments to implement legislation enacted by Congress." *Id.* at 176.  The Court found that "[i]n this provision, Congress has not held out the threat of exercising its spending power or its commerce power; it has instead held out the threat, should the States not regulate according to one federal instruction, of simply forcing the States to submit to another federal instruction." *Id.* at 176.  The provision violated the Tenth Amendment because "[a] choice between two unconstitutionally coercive regulatory techniques is no choice at all." *Id.*  In conclusion, the Court stated that

> The Federal Government may not compel the States to enact or administer a federal regulatory program. The Constitution permits both the Federal Government and the States to enact legislation regarding the disposal of low level radioactive waste. The Constitution enables the Federal Government to pre-empt state regulation contrary to federal interests, and it permits the Federal Government to hold out incentives to the States as a means of encouraging them to adopt suggested regulatory schemes. It does not, however, authorize Congress simply to direct the States to provide for the disposal of the radioactive waste generated within their borders.

*Id.* at 188.

Next, in *Printz v. United States*, 521 U.S. 898 (1997), the Court extended the rule it announced in *New York* by holding that Congress cannot circumvent its prohibition on compelling the States to enact or administer a federal program by conscripting the State's officers directly.  *Id.* at 935.  At issue in *Printz* were two provisions of the Brady Handgun Violence Prevention Act: (a) the obligation that a state's chief law enforcement officer ("CLEO") "make a reasonable effort to ascertain within 5 business days [of an application for a handgun] whether receipt or possession [of a handgun] would be in violation of the law, including research in

whatever State and local recordkeeping systems are available and in a national system designated by the Attorney General," *id.* at 933 (quoting 18 U.S.C. § 922(s)(2) (first alteration added)), and (b) "the duty implicit in the background-check requirement that the CLEO accept notice of the contents of, and a copy of, the completed Brady Form, which the firearms dealer is required to provide to him." *Id.* at 933–34 (citing §§ 922(s)(1)(A)(i) (III) and (IV)).

The Supreme Court found these provisions unconstitutional under the Tenth Amendment, reasoning that "[t]he mandatory obligation imposed on CLEOs to perform background checks on prospective handgun purchasers plainly runs afoul of th[e] rule," announced in *New York* that "the Federal Government may not compel the States to enact or administer a federal regulatory program." *Id.* at 933 (quoting *New York*, 505 U.S. at 188). Summarizing the two key holdings in *New York* and *Printz*, the Court held that "[t]he Federal Government may neither issue directives requiring the States to address particular problems, nor command the States' officers, or those of their political subdivisions, to administer or enforce a federal regulatory program." *Id.* at 935.

The Court finds that PACT Act does neither of the things that the Supreme Court found to be contrary to the Tenth Amendment in *New York* and *Printz*: the Act does not "requir[e] a state legislature to enact a particular kind of law" as in *New York*, nor does it command any state officials "to administer or enforce a federal regulatory program" as in *Printz*. The Act also does not infringe on any state's power to tax, nor limit its ability to change its tax scheme in the future. *See Prudential Ins. Co. v. Benjamin*, 328 U.S. 408, 438–39 (1946) (rejecting the argument that the McCarran-Ferguson Act, a federal law that provided in relevant part, that insurance shall be subject to the law of the States, invaded the state's own power of taxation). Gordon has failed to state a claim that the PACT Act violates the Tenth Amendment.

The Court finds that only one of Gordon's three constitutional challenges to the PACT Act states a claim upon which relief can be granted and has a likelihood of success—specifically, his claim that the tax provision of the act violates due process.  Gordon's two other claims—that the mail ban violates equal protection and due process and that the tax provisions violate the Tenth Amendment—fail to state a claim upon relief can be granted and therefore have no likelihood of success.

**2.      The Likelihood That Gordon Will Suffer Irreparable Harm**[16]

Gordon argues that he will suffer irreparable harm if the Court does not enjoin enforcement of the PACT Act as a result of the loss of his business, as well as the deprivation of constitutional rights.  He alleges that he has already lost 90% to 95% of his business and 100% of his profits.  In addition, he has laid off sixteen of his twenty-two workers, reduced all but one to part-time, and will likely have to close the business entirely if the mail ban is not immediately enjoined.[17]  In addition to the loss of his business, he complains that he will have to bear the burden of having to monitor and comply with at least 550 state and local tax schemes.  Lastly, he asserts that the deprivation of his due process and equal protection rights alone constitutes irreparable harm.  The Government admitted at the preliminary injunction hearing that if Gordon complies with the challenged provisions of the PACT Act, he will not be able to continue his business of selling inexpensive tax-free cigarettes by mail, but argues that Gordon has no right to

---

[16]  Because Gordon's mail ban claim and Tenth Amendment claim will be dismissed for failure to state a claim, his motion for a preliminary injunction is moot.  Accordingly, the Court need not address the remaining three preliminary injunction factors as to these claims.

[17]  As mentioned above, *supra* note 5, the tax provisions were enjoined by the Western District of New York in July 2010.

that business in light of Congress's conclusions regarding the harms perpetuated by mail order tobacco sales.

In light of Gordon's likelihood of success on his claim that the PACT Act's tax provisions violate due process, the Court finds that this potential deprivation of constitutional rights constitutes irreparable harm. *See Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009) ("It has long been established that the loss of constitutional freedoms, 'for even minimal periods of time, unquestionably constitutes irreparable injury.'") (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *Davis v. District of Columbia*, 158 F.3d 1342, 1346 (D.C. Cir. 1998) ("Although a plaintiff seeking equitable relief must show a threat of substantial and immediate irreparable injury, a prospective violation of a constitutional right constitutes irreparable injury for these purposes.") (citation omitted).

### 3.    The Balance Of Equities

Next, the Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Resources Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (internal quotation marks omitted). Gordon contends that none of the defendants would be harmed by an injunction, as they would be relieved from having to enforce the PACT Act. He further asserts that a preliminary injunction would not undermine the Act's goals because taxes not collected during the injunction period could be recovered if the Act is ultimately held to be constitutional. Sales to underage smokers and illegal trafficking would remain illegal even in the event of an injunction. The Government responds that any harm to Gordon is far outweighed by the public harms that would flow from even a temporary stop to the Act's implementation, including the greater ease with which

children could obtain tobacco, billions of dollars in lost tax revenue, and the sales taken away from law-abiding retailers.

The Court finds that the balance of the equities favors Gordon with regard to the tax provisions because he has demonstrated that he is likely to succeed on his claim and likely to suffer irreparable harm in the absence of preliminary relief by virtue of a potential deprivation of his constitutional right to due process.  The possible injury to Gordon from enforcement of the provisions therefore outweighs the possible injury to defendants from enjoining enforcement until the merits of Gordon's claim can be determined.

**4.      Whether Enjoining The PACT Act Is In The Public Interest**

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."  *Winter*, 555 U.S. at 24.  In support of his argument that a preliminary injunction of the PACT Act is in the public interest, Gordon points to the public's interest in avoiding enforcement of an unconstitutional law.  Citing the Western District of New York's decision in *Red Earth LLC v. United States*, 728 F. Supp. 2d 238 (W.D.N.Y. 2010), Gordon emphasizes the Act's "sweeping and unprecedented," *id.* at 260, expansion of state and local tax schemes, and points to the "severe economic consequence likely to befall [the] members of the Western New York community," including the Seneca Nation, especially its retailers and their employees.  *Id.* at 259.

The Government responds that the Court cannot substitute its own determination of the public interest for those that the legislative and executive branches made in passing the Act, citing *Able v. United States*, 44 F.3d 128, 131–32 (2d Cir. 1995).  In light of all the public

interest goals that motivated the PACT Act, the Government urges the Court to find that

enjoining the Act is not in the public interest.

The Court agrees with Gordon that enforcement of a potentially unconstitutional law that

would also have severe economic effects is not in the public interest.

### III.   CONCLUSION

For the foregoing reasons, the Court concludes that Gordon is entitled to a preliminary

injunction of the PACT Act's tax provisions because Gordon is likely to succeed on his claim

that the provisions violate due process, he has established that he is likely to suffer irreparable

harm as a result of the provisions, the balance of equities tips in Gordon's favor, and an

injunction of these provisions is in the public interest.  Because Gordon's mail ban claim and his

Tenth Amendment claim fail to state claims as a matter of law and will be dismissed, his motion

for a preliminary injunction based on these claims will be denied as moot.  An appropriate order

accompanies this Memorandum Opinion.


Signed by Royce C. Lamberth, Chief Judge, on December 5, 2011