UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **ROBERT GORDON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Civil Action No. 10-1092 (RCL) |
| | ) | |
| **ERIC HOLDER, Attorney General of the United States,** *et al.***,** | ) ) | |
| | ) | |
| **Defendants.** | ) ) | |

## MEMORANDUM OPINION

Pending before the Court is plaintiff's application for a permanent injunction and declaratory relief. ECF No. 48. After considering this motion, the response and reply thereto, the filings of various *amicus curiae*, the record, and the relevant authorities, the Court concludes that this case must be dismissed as moot.

**I. BACKGROUND**

Plaintiff Robert Gordon owned a store and mail order business selling cigarettes. Joint Stipulations ¶¶ 6, 8–9, ECF No. 47. He filed this lawsuit seeking an injunction to prevent enforcement of many provisions of the Prevent All Cigarette Trafficking Act ("PACT Act" or "the Act") and a declaration that those provisions are unconstitutional. The Court previously dismissed all but one of Gordon's claims. Order, Dec. 5, 2011, ECF No. 37. A preliminary injunction was entered, however, staying the enforcement of 15 U.S.C. § 376a(a)(3)(A)–(B), (4), and § 376a(d). *Id.* That portion of the Act requires delivery sellers, like Gordon, to "comply with 'all State, local, tribal, and other laws generally applicable to sales of cigarettes or smokeless tobacco as if the

delivery sales occurred entirely within the specific State,' meaning that they must collect any taxes that state or local laws require in-state retailers to collect." *Gordon v. Holder*, 721 F.3d 638, 642 (D.C. Cir. 2013) (quoting 15 U.S.C. § 376a(a)(3)).  Gordon argues that this portion of the law runs afoul of the Due Process Clause.  The Court concluded that a preliminary injunction was warranted as to this portion of the statute because Gordon demonstrated a sufficient likelihood of success on the merits and he met the other preliminary injunction factors. *Gordon v. Holder*, 826 F. Supp. 2d 279, 297 (D.D.C. 2011).  The Court of Appeals affirmed. *Gordon*, 721 F.3d at 657–58.

Between the Court's entry of the preliminary injunction and the Court of Appeals' decision affirming it, Gordon's business closed. *Id.* at 643.  The Court of Appeals concluded, however, that the case was not mooted by this event because Gordon's wife, Marcia Gordon, "submitted a sworn declaration that she and Gordon intend to reopen their business if they prevail, and that they remain capable of doing so." *Id.*  The Court of Appeals based its conclusion on precedent holding that a party's "uncontroverted intention to operate in the future in ways that would violate" the challenged government restriction maintains a lawsuit's vitality. *Unity08 v. FEC*, 596 F.3d 861, 864 (D.C. Cir. 2010).

The Court of Appeals observed that, although its mootness determination was final, it was possible that facts could arise later which would "moot the case in the future, at which point the district court would be required to dismiss Gordon's complaint." *Gordon*, 721 F.3d at 643 n.3.  In fact, the circumstances surrounding this lawsuit have changed significantly in the intervening period.  Gordon now stipulates that he has no intention of reopening his business whether or not he prevails in this lawsuit.  Joint Stipulations ¶ 11.  Additionally, Gordon is party to a consent order in the Southern District of New York stating that he "shall not, directly or indirectly . . . make, participate in, assist, aid or abet, or receive any direct benefit from any sale, shipment or

delivery of cigarettes or tobacco products to any person." *City of New York v. Gordon*, Order on Consent ¶ 1, Civil Action No. 12-cv-4838 (VSB), 2014 WL 4471007 (S.D.N.Y. June 10, 2014).

Defendants have submitted evidence indicating that Gordon is highly unlikely to face federal government initiated repercussions from his past conduct. Before the Court is the declaration of Joseph Fox, Chief of the Alcohol and Tobacco Enforcement Branch, Bureau of Alcohol, Tobacco, Firearms and Explosives, U.S. Department of Justice. Joseph Fox Decl. ¶ 1, ECF No. 57-1. Fox has represented to the Court that ATF has no intention, based on all evidence currently known to ATF, to "seek or recommend enforcement action against Gordon under the PACT Act." *Id.* ¶ 35. As Chief of the Alcohol and Tobacco Enforcement Branch at ATF, Fox is "responsible for overseeing ATF's alcohol and tobacco diversion programs." *Id.* ¶ 33. His duties include "oversee[ing] and review[ing] investigations and potential enforcement actions, mak[ing] decisions about which ones warrant such actions, and develop[ing] and administer[ing] alcohol and tobacco enforcement priorities for ATF." *Id.* The Attorney General has "delegated principal enforcement authority for the PACT Act" to ATF. U.S. Dep't of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives, *ATF 2013 PACT Act Report* at 1 (Mar. 5, 2013), ECF No. 57-10.

## II. LEGAL STANDARD

### A. Mootness

Mootness doctrine arises out of Article III of the Constitution and its limitation on judicial power to the consideration of "cases" or "controversies." *See Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983). "Simply stated, a case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Cnty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979) (internal quotation marks omitted). The basic premise of the doctrine is that

the "requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) (quoting Henry P. Monaghan, *Constitutional Adjudication: The Who and When*, 82 Yale L.J. 1363, 1384 (1973)). If a case is moot and, therefore, does not conform to the requirements of Article III, the Court must dismiss for lack of subject matter jurisdiction. *Iron Arrow*, 464 U.S. at 70.

"The burden of demonstrating mootness is a heavy one." *Davis*, 440 U.S. at 631 (internal quotation marks omitted). "A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Decker v. Nw. Envtl. Def. Ctr.*, 133 S.Ct. 1326, 1335 (2013) (internal quotation marks omitted). The key determinant is whether relief would be effectual as to the parties before the Court. *Cf. Burke v. Barnes*, 479 U.S. 361, 364 (1987) (holding that respondents could not overcome mootness by pointing to a possible future lawsuit; that dispute, if it arose, "would not be between the parties to this case").

### B. Prudential Mootness

The type of mootness discussed in the preceding section has a mandatory effect and is rooted in constitutional requirements. The closely related doctrine of prudential mootness is also relevant to this case.

Prudential mootness arises out of a court's discretion to decline to grant equitable relief. *Penthouse Int'l, Ltd. v. Meese*, 939 F.2d 1011, 1019–20 (D.C. Cir. 1991). Even when a case is not moot in the Article III sense, it will sometimes be "so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant." *Chamber of Commerce of U.S. v. U.S. Dep't of Energy*, 627 F.2d 289, 291 (D.C. Cir. 1980) (describing this doctrine as the "remedial counterpart" to

mootness and as "a mélange of doctrines relating to the court's discretion in matters of remedy and judicial administration"). In light of the equitable foundation of this doctrine, a court may withhold injunctive or declaratory relief in reliance upon it. *Id.* at 292.

The inquiry governing prudential mootness "cannot be cabined by inflexible, formalistic rules, but instead require[s] a case-by-case judgment regarding the feasibility or futility of effective relief should a litigant prevail." *In re AOV Indus., Inc.*, 792 F.2d 1140, 1147–48 (D.C. Cir. 1986). Nonetheless, one guiding principle is that considerations favoring prudential mootness are heightened when withholding equitable relief would "avoid the premature adjudication of constitutional issues." *Penthouse Int'l*, 939 F.2d at 1020.

## III. APPLICATION

### A. Mootness

Defendants argue that Gordon's suit is now moot because of the events described above. In part, Gordon does not dispute this contention. He concedes that the allegedly unconstitutional portion of the PACT Act at issue in this case can no longer have any effect on his future conduct. Pl.'s Appl. for Permanent Inj. and Declaratory Relief 15, ECF No. 48. He has stipulated that he has no intention of reentering the business of selling tobacco products and he is bound by a court order to the same effect.

Gordon argues that this case is not moot, however, because he could still face enforcement proceedings related to his past violations of the Act's tax provisions. *Id.* He points to hypothetical enforcement proceedings that might be brought by federal, state, or local authorities. *Id.* at 15–18. If the Court were to rule in Gordon's favor, he argues, the possibility of his being liable in these proceedings would be foreclosed. *Id.* at 18.

The Supreme Court and D.C. Circuit Court of Appeals have previously evaluated the continuum of circumstances where mootness issues might arise in the context of possible prosecution or enforcement proceedings. At one end of the spectrum, an explicit statement from a government official before the court that there is a present intent to prosecute can preserve a case's vitality. *Clarke v. United States*, 915 F.2d 699, 702 (D.C. Cir. 1990) (citing *Edgar v. MITE Corp.*, 457 U.S. 624, 630 (1982)). At the other end, "the risk [of prosecution] may be great enough where the record on intent to prosecute is a blank." *Id.* (citing *Charles v. Daley*, 749 F.2d 452, 457 (7th Cir. 1984)). Finally, when the government concedes for the record that there exists a "complete and adequate defense" to prosecution and that "no one has ever suggested that there would be" a prosecution, the case is likely moot. *Id.* at 701–02.

Here, defendants have submitted Joseph Fox's declaration that ATF has no intent to seek or recommend enforcement action against Gordon pursuant to the PACT Act. Thus, the record on intent to prosecute is not "blank" in this case. Instead, ATF has affirmatively set forth its lack of intent to seek or bring enforcement proceedings against Gordon. Fox's declaration has substantial force, given that he heads the division of ATF responsible for bringing and steering PACT Act enforcement actions and in light of the fact that ATF has primary enforcement responsibility for the Act.

While there is some risk that future federal officials might change enforcement priorities, the test for mootness is not whether there is "zero risk" of future prosecution. *See id.* at 702. Federal authorities are well aware of Gordon's activities. Indeed, he has conceded in this litigation that he violated the PACT Act's taxing provisions. *See* Joint Stipulations ¶ 9 ("When Gordon was actively in the business of delivery selling cigarettes, he sold cigarettes that did not have State or local cigarette excise taxes paid on the cigarettes which corresponded to the State or locality in

which the cigarettes would be delivered."). It is wholly speculative to imagine that facts would come to the government's attention in the future that would change its present enforcement intent or that a future holder of Fox's office would have a different view as to Gordon's conduct. *Cf. Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (internal quotation marks omitted) (holding plaintiffs are not proper when their fears of prosecution are only "imaginary or speculative").

In seeking to blunt the impact of the Fox declaration, Gordon points to *Mesa Petroleum Co. v. Cities Service Co.*, 715 F.2d 1425 (10th Cir. 1983). There, an Oklahoma official claimed that plaintiff's suit to enjoin enforcement of an Oklahoma statute as unconstitutional was moot because the plaintiff had ceased the conduct made unlawful by the statute. *Id.* at 1426, 1431. Plaintiff responded that the possibility the state would bring legal action against it for a past violation kept the case alive. *Id.* at 1431. The Oklahoma official said in reply that he had no intent to prosecute plaintiff. *Id.* The court found this reply unpersuasive. *Id.* It held that the "putative enforcement intent of a particular state official is too slender a reed on which to rest our decision as to whether a live controversy is presented." *Id.*

While the Fox declaration bears some similarity to the rejected statement in *Mesa Petroleum*, the Court concludes that the case is distinguishable and that the controversy between Gordon and the defendants is moot. First, the D.C. Circuit, sitting *en banc* in *Clarke*, noted that the agency in *Mesa Petroleum* informed the district court that "state law is determinative of [its] enforcement intentions." *Clarke*, 915 F.2d at 702 (quoting *Mesa Petroleum*, 715 F.2d at 1431). The *Clarke* court concluded that this statement could have been interpreted by the 10th Circuit panel as a "deliberate equivocation," thus further reducing the import of the purported concession. *Id.* at 702–03. No similar equivocation is presented on this record.

Also, it is unclear whether the D.C. Circuit would decide *Mesa Petroleum* in the same fashion as the 10th Circuit.  In fact, a close reading of *Clarke* suggests that *Mesa Petroleum* would come out differently here.  The *Clarke* court explicitly observed that the case before it was mooted despite the existence of some prosecution risk.  *Id.* at 702.  This risk sprang in part from the possibility that "[l]ater government representatives" might attempt to renege on their prior representations that prosecution was not being contemplated and that the plaintiff had a complete defense to any potential prosecution.  *Id.*  While the government's concession in *Clarke* was stronger than that presented here or in *Mesa Petroleum*, the Circuit's opinion appears to contemplate that the enforcement intent of government officials is sturdy enough to sustain a conclusion of mootness.  For these reasons, Gordon's reliance on *Mesa Petroleum* is unpersuasive.

Gordon also argues that this case is not moot by pointing to enforcement proceedings that might be brought by states and localities.  This argument is unavailing.  Possible actions of state and local authorities are irrelevant to the determination of mootness here.  The defendants in this case are all federal agencies and officers.  In deciding the question of mootness, a court must ask whether it is capable of providing concrete, effectual relief to the prevailing party before it.  Gordon concedes that a permanent injunction would bind only the defendants before the Court.  Pl.'s Reply 9, ECF No. 63.  Instead, he argues that a declaratory judgment of facial unconstitutionality would prevent a state or locality from seeking relief against Gordon under the PACT Act.  *Id.*  Such a judgment, however, would not bind states or localities because they are not parties to this case. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n.7 (1979) ("It is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard.").  It is insufficient for mootness purposes that a declaration of facial unconstitutionality—assuming it was affirmed by the Court of Appeals—would have

precedential effect in subsequent lawsuits. *Cf. Comite de Apoyo a los Trabajadores Agricolas (CATA) v. U.S. Dep't of Labor*, 995 F.2d 510, 514 (4th Cir. 1993) ("The fact that a declaratory judgment may have persuasive or even precedential weight in a subsequent proceeding will not alone suffice to confer standing upon a party seeking to invoke federal jurisdiction. Article III requires more."). If Gordon's argument were the rule, it would fundamentally undermine the foundational requirement that courts may not issue advisory opinions.

In short, Gordon's case is moot and no longer presents an Article III case or controversy. He no longer engages in the prohibited conduct and has conceded he never intends to again. The risk that he will be subject to future federal enforcement of the Act for his past conduct is speculative and remote in light of the Fox declaration and the lack of any pending threats of enforcement. The risk of future state and local enforcement of the Act is also speculative and, more important, irrelevant to the Court's determination of the mootness question in this case.

### B. Prudential Mootness

Even if the potential for enforcement action by federal, state, or local authorities were sufficient to sustain this case for purposes of Article III, the Court would still be constrained to dismiss it pursuant to the doctrine of prudential mootness.

By his own admission, a favorable ruling would have no effect on Gordon's future conduct. Therefore, an injunction or a declaration of facial invalidity would only have the effect of forestalling a possible federal enforcement action. The argument that such an action is likely to arise is, at best, speculative. The connection of equitable relief in this case with the potential actions of state and local authorities is even more attenuated. No such authorities are before the Court as parties.

Additionally, Gordon seeks equitable relief that would invalidate part of a federal statute on a novel constitutional basis. *Gordon*, 721 F.3d at 645 (concluding that Gordon's challenge to the tax collection portion of the PACT Act "presents two substantial and novel constitutional questions"). He brings only a facial challenge to the taxing provision of the Act. Joint Stipulations ¶ 10.

These circumstances present the sort of situation where a court should stay its hand. For the reasons already stated, it is wholly speculative that granting the requested equitable relief would "actually relieve the injury" Gordon alleges. As a result, prudential mootness comes into play; the Court should normally refrain from exercising its equitable powers in such a situation. *See Penthouse Int'l*, 939 F.2d at 1019–20. Even greater caution is warranted because this case requires consideration of a "constitutional issue of first impression." *See id.* Furthermore, the constitutional questions presented by Gordon's suit arise from the disfavored posture of a facial challenge. *See Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008) ("Facial challenges are disfavored for several reasons."). For these reasons, the Court will exercise its discretion to decline to decide these difficult and important constitutional questions until they are "squarely presented." *See Penthouse Int'l*, 939 F.2d at 1020.

## IV.  CONCLUSION

For the foregoing reasons, the Court will dismiss this case as moot. It will also vacate its previously issued preliminary injunction in light of this disposition.

A separate Order consistent with this Memorandum Opinion shall issue this date.

Signed by Royce C. Lamberth, United States District Judge, on March 26, 2015.